139  643
p149 ¹  37.

VILLAGE OF MORRICE *v.* SUTTON.

1. MUNICIPAL CORPORATIONS—CONTRACTS—LIGHTING—POWER OF
COUNCIL.

Under section 2908, 1 Comp. Laws, providing that the council
of an incorporated village may contract for any period not
exceeding 10 years for gas, electric, or other lights, the coun-
cil has no power to enter into such a contract during the life
of a valid contract previously entered into, covering the
period of 10 years.

2. SAME—PRIVATE ADVENTURE—PUBLIC AID.

A municipality has no power to aid, by contract or otherwise,
a private adventure, and money paid by a village council as
a bonus to secure the building of a grist mill and electric
lighting plant may be recovered as money received.

Error to Shiawassee; Smith, J.   Submitted February
16, 1905.   (Docket No. 167.)   Decided April 21, 1905.

Assumpsit by the village of Morrice against Edward
Sutton and George Mackey, copartners as Sutton &
Mackey, for money had and received.   There was judg-
ment for plaintiff, and defendants bring error.   Affirmed.

*Lyman B. Trumbull* and *Thomas E. Barkworth,* for
appellants.

*John T. McCurdy,* for appellee.

OSTRANDER, J.   The village of Morrice sued defend-
ants, declaring on the common counts in assumpsit, and
furnishing a bill of particulars, which, in substance, states
its demand to be $2,000 in money paid by plaintiff to de-
fendants as a bonus.   The plea was the general issue.   A
trial was had before the court without a jury.   An opin-
ion, which has by all parties been treated as a finding of

facts and law, was filed; and later, upon the application of defendants, an amended and extended finding was made and filed. Both the opinion and the amended findings are here set out at length:

" OPINION.

" This is an action of assumpsit, whereby the plaintiff seeks to recover of defendants the sum of $2,000, and interest thereon, which plaintiff claims was of the public moneys of said village, and which the defendants unlawfully and wrongfully received into their hands and to their use. It is an undisputed fact in this case that the defendants received such sum of $2,000 of the public money of the plaintiff with full knowledge that the same was the property of the plaintiff, and that the same was paid over to them as a bonus for building a mill and lighting plant. Such a perversion of public moneys can only be in violation of the law, and cannot be sustained by the courts.

" Defendants, by brief, argue that the contract between the plaintiff and E. Bennett & Sons 'was not assigned' to the defendants, etc. (Exhibit B); that such contract (Exhibit A) had been assigned to defendants; and that defendants were agreeing to furnish light under the terms and conditions of such last-named contract.

"It is further argued in behalf of the defendants that there was a consideration moving to plaintiff for such $2,000 by force of the agreements of the defendants to furnish certain electric lighting to plaintiff, etc. Such claim cannot be sustained in face of the statement in the contract (Ex. B) that 'said sum of three thousand dollars to be paid to them by said second parties [i. e., plaintiff] as a voluntary aid in the construction of an electric light plant and flouring mill.' As far as it appears in this case, any lighting furnished to plaintiff by defendants has been paid for by plaintiff according to the terms of the contract Exhibits A and B.

"My conclusions are that the plaintiff is entitled to recover of defendants such sum of $2,000, and interest thereon at the rate of five per cent. from September 15, 1900, to this time, amounting in all to the total sum of $2,325, with costs to be taxed.

"Let finding and judgment be entered accordingly.

"AMENDED FINDINGS.

"1. I find that said plaintiff is a village incorporated under the general laws for the incorporation of villages.

"2. That defendants, on or about the 7th day of June, 1900, purchased of Edmund Bennett a gristmill and an electric light plant situated within said village; being the only gristmill and lighting plant within said village.

"3. That said lighting plant, which was operated in connection with said gristmill, had been used to furnish light for said village under certain contract entered into between said village and Bennett & Sons on the 13th day of November, 1899, which contract is in words and figures as follows:

" '_This Indenture_ made this 13th day of November, A. D. 1899, between the village council of the village of Morrice, county of Shiawassee, State of Michigan, for said village of Morrice of the first part and Edmund Bennett of the same place of the second part:

" '_Witnesseth_, That the said party of the first part together with their successors in office do bargain and contract with the said second party to buy all electric lighting of said party of the second part for a period of ten years from and after said second party has his electric light plant installed in said village of Morrice, which is to be installed within four months from the date hereof; and it is further agreed by said party of the second part to furnish said village eight arc lights, each of 1,600 candle power, schedule of standard make and to maintain and operate the same for said period of ten years after said plant is installed as aforesaid at a cost to said village of Morrice of $50 a year for each arc light aforementioned; the same to be paid monthly in advance by said village to said Bennett or his assigns during the continuance of this contract. The light to be furnished as aforesaid'shall be kept clean by said second party or his assigns and shall burn from sundown, dark, each night until eleven o'clock p. m., except Saturday nights said lights shall burn until twelve o'clock and except also moonlight nights. And the same shall be maintained as aforesaid unavoidable accidents excepted. The said council and their successors do hereby grant to said second party and his assigns the right to the use of the streets, alleys, and public grounds in said village of Morrice as shall be necessary to enable the said Bennett or his assigns to construct and operate proper works for the supplying of said lights to said village under this contract, and supplying the inhabitants thereof with incandescent lights on any terms that may be agreed upon by said inhabitants and said Bennett or his assigns; such grant to continue

for the period of 25 years from the date hereof. It is also agreed that said eight arc lights are to be placed within the corporation limits of said village, and at such points as may be determined by said council; and should said council or their successors require any more lights for said village, the same shall be furnished by said second party or his assigns at the rate aforesaid in consideration of the privileges hereby granted.

" ' *Witness* the signature of the parties hereto on the day first above mentioned.

" 'ROBERT B. CRAIG,
" 'President, and
" 'CLAUD E. JONES,
" 'Clerk of the Village of Morrice, Shiawassee County, Michigan.
" 'E. BENNETT & SONS.'

"4. That said contract was afterwards assigned by said Bennett & Sons to said defendants. While I do not find that the defendants, or either thereof, ever contracted or agreed directly with said plaintiff to assume or carry out the terms and conditions of such last-mentioned contract, yet I do find that the defendants subsequently, by their contract of date, to wit, September 7, 1900, made with Benjamin F. Rann, William Case, and Abraham L. Beard, and hereinafter set forth, did contract and agree with said last-mentioned persons 'to furnish said village with lights under the terms and conditions of said last-mentioned contract between said village and said Bennett & Sons.'

"5. That said defendants afterwards purchased said mill and lighting plant and property, and that about 30 days after such purchase such property was struck by lightning and burned up.

"6. That during the course of the summer of the year 1900 certain representative citizens of said village of Morrice held out as an inducement to defendants to rebuild said mill and lighting plant that they would raise the sum of $3,000, to be paid to defendants on conditions embodied in the contract hereinafter next mentioned.

"7. That on, to wit, the 7th day of September, 1900, a written contract was made and entered into by and between defendants, as parties of the first part, and William Case, Benjamin F. Rann, and Abraham L. Beard, three citizens of said village of Morrice, as parties of the second part, which contract is in words and figures as follows, viz.:

" ' *This Agreement* made and entered into this 7th day of Septem-

ber, 1900, by and between Edward Sutton and George Mackey of Albion, Michigan, of the first part, and William Case, Benjamin F. Rann, and Abraham L. Beard, of Morrice, Shiawassee county, of the second part:

" ' *Witnesseth,* That the said first parties, for and in consideration of the sum of $3,000 to be paid to them by said second parties, as a voluntary aid in the construction of an electric light plant and flouring mill, at the time and in the manner hereinafter stated, do agree to construct substantially after the plans and specifications of the Jackson Flour Mill and Machinery Company of Jackson, Michigan, a copy of which specifications is hereto attached and made a part of this agreement. Said first parties also agree to erect and maintain an electric light plant of sufficient power to furnish current to light the village of Morrice with at least ten arc lights of 1600 candle power, also of sufficient power to furnish current for at least 500 incandescent lights if so many be desired by private citizens of said village. Said first parties agree to furnish the village with light under the terms and conditions of a certain contract made on the 13th day of November, 1899, with Bennett & Sons, which contract has been duly assigned to said first parties. Said flouring mill and electric light plant shall be located on some suitable site within the said village of Morrice.

" ' The payment of the sum herein stipulated shall be made as follows: When the foundation walls are all completed according to specifications, and the lumber and all other materials for said building are upon said ground the sum of $1,000; when the building is fully inclosed, the sum of $500, when the boiler and engine are upon the ground, the sum of $500, and at the completion of both the mill and electric light plant in the manner heretofore specified, the sum of $1,000, all of which the said second parties agree to pay to said first parties.

" ' It is further agreed that said first parties shall keep said mill and electric plant insured in the sum of at least $2,000, and shall assign said insurance to the amount of $2,000 to said second parties as security for the specific performance by first parties of the following undertaking, to wit: In case said mill and electric plant shall be destroyed by fire in whole or in part and first parties shall not elect to rebuild said mill and electric light plant or to resume operations, then in that event said first parties shall pay back to said second parties the sum of $2,000, less the amount of premiums actually paid by said first parties in carrying said insurance. When said first parties have expended the sum of $2,000 in premiums in carrying the insurance to the amount above specified then this agreement to assign insurance and return any sum to said

second parties in case first parties should not elect to rebuild after a fire, shall become void.

" 'This agreement shall be binding upon and inure to the benefit of the heirs, representatives, and assigns of the respective parties.

" '*In Witness Whereof*, the respective parties have hereunto set their hands and seals the year and day first above written in duplicate.

> " 'EDWARD SUTTON.    [L. S.]
> " 'GEORGE MACKEY.    [L. S.]
> " 'BENJAMIN F. RANN.    [L. S.]
> " 'WILLIAM CASE.    [L. S.]
> " 'ABRAHAM L. BEARD.    [L. S.]

" 'In the presence of, as to Edward Sutton:

> " 'JOHN A. BROWN.
> " 'PALMER M. DEARING.

" ' Witnesses to George Mackey and parties of the second part:

> " 'R. B. CRAIG.
> " 'H. B. WATERMAN.'

"8. That defendants built and constructed a mill and electric light plant substantially according to the terms of said last-mentioned contract, and received the sum of $3,000, as therein provided, of which last-mentioned sum of money $1,000 was raised by said second parties by subscription, and $2,000 thereof was raised by the sale of the municipal bonds of plaintiff; that the issuing of such bonds was through the action of the village council of plaintiff after the question of the issuing of such bonds had by said village been submitted to, and voted upon by, the electors of said village at a special election called by such council for such purpose; that the $2,000 so received by said village was by its municipal officers turned over into the hands of the said parties of the second part to the last above mentioned contract, and by them afterwards paid to the said defendants; that said defendants, at and before the time they so received said sum of $2,000, were advised and had knowledge of the manner and means by which such moneys were procured, and that such last-mentioned sum was the property of the said plaintiff village.

" 9. That said sum of $2,000 was delivered to defendants by said Rann, Case, and Beard as follows, viz.: $1,000 thereof on November 5, 1900; $500 thereof on November 17, 1900; and $500 thereof on January 22, 1901. That such sum of $2,000 was received by said Rann, Case, and Beard from said village for the purpose of delivery to defendants on or about September 15, 1900.

"10. That defendants substantially completed such mill and electric lighting plant on or about January 22, 1901, and have furnished light for said village of Morrice from that time until the present under the terms and conditions of the contract which said Bennett & Sons made with said village and assigned to defendants, and have received pay therefor from said village as stipulated in said contract with Bennett & Sons.

"11. That, in the making of said contract by Case, Rann, and Beard with defendants, at least some of the members of said village council had knowledge thereof, and impliedly consented thereto and approved of the same, but I do not find that the common council of said village, by action as a council, ever directly consented to or approved of the making of such contract further than by their subsequent action in calling a special election submitting to the electors of said village the question of issuing bonds, and the further action of said council in issuing bonds of said village and selling the same, and thereby raising the said sum of $2,000, and causing said last-mentioned sum to be delivered into the hands of Case, Rann, and Beard, and which sum of $2,000 subsequently came into the hands of defendants in the manner hereinbefore stated.

"12. That said defendants, for a time, at least, and without objection from said plaintiff, furnished lights and lighting in compliance with the terms of their said contract with Case, Rann, and Beard, and that said plaintiff village has paid defendants therefor according to the terms of said last-mentioned contract with Bennett & Sons.

"13. That said plaintiff has assumed to recognize such last-mentioned contract, and acted under it, to the extent that it made provision for the payment to defendants of the sum of $2,000 of the $3,000 in such contract mentioned, and which was so as aforesaid by Case, Rann, and Beard paid over to defendants, and has paid defendants for lighting as stated in the foregoing (12) paragraph of these amended findings of fact.

"14. I am not able to determine from the evidence whether the defendants would or would not have erected the electric lighting plant and furnished lights to plaintiff under their contract with Case, Rann, and Beard, but for the payment of said sum of $2,000, but it is but a fair presumption that defendants would not have done so without payment to them of said sum.

"15. In addition to the findings as to matters of the foregoing 14 proposed amendments of findings of facts, I further find and add thereto that there was a plan or scheme in which a portion at least of the members of said village council, a large number of the electors of said village, Rann, Case, and Beard, and the defendants in this case, were to some extent engaged, or had knowledge of, to get and use said sum of $2,000, and pay the same over to defendants as a bonus for building and erecting said mill and electric lighting plant, which sum was the $2,000 so as aforesaid paid over to defendants by Case, Rann, and Beard.

"As to defendants' requests for a finding of conclusions of law, they are all denied, except as they may be embodied in the following conclusions: The whole proceeding of the disposition of said sum of $2,000 was unlawful and void; and it does not matter whether there were or were not informalities or neglect of methods anywhere in such proceeding, or whether such proceedings were regular or irregular. The result is the same—that public moneys of a municipal corporation cannot be lawfully used for the particular benefit of private individuals, even though the general public may incidentally receive some benefits from such use in common with such private individuals."

But two assignments of error, viz., the eighth and the third, are argued. These are:

"8. The court erred in refusing to make the fourth finding of fact proposed by defendants."

"3. The court erred in making the finding as follows:

"'It is an undisputed fact in this case that the defendants received such sum of $2,000 of the public money of the plaintiff with full knowledge that the same was the property of the plaintiff, and that it was paid over to them as a bonus for building a mill and lighting plant.'"

The fourth finding of fact proposed by defendants reads:

"That said contract [the Bennett & Sons contract] was not at any time assigned to said defendants, or either of them; neither did they assume nor agree with Bennett & Sons to carry out its conditions."

It is true, as claimed by counsel, that defendant Sutton, who bought the Bennett property, testified, "I did not

assume in any manner the obligations of that contract."
After purchasing the Bennett plant, defendants, for 30
days or more, continued to supply electric lighting as
Bennett had done.   In the contract of September 7, 1900
(seventh finding), to which defendants are parties, it is
recited that the Bennett contract has been duly assigned
to defendants, and defendants agree, in terms, to provide
light under the terms and conditions of that contract.
True, this contract is not one to which the village is a
party, but the facts recited are some evidence supporting
the finding of the circuit judge.   It is at least debatable
whether defendants are not estopped to assert against the
plaintiff that they are not bound as assignees of the Ben-
nett contract.   They have furnished lights thereunder as
his successors; they bought his property, knowing about
his obligation to the village; and the instrument contains
a grant of the use of the streets, alleys, and public places
in the village for a term of 25 years for public and private
lighting.   By reasonable inference, it appears, that, under
this contract and grant, private lighting is being done.
Suppose, however, for the purposes of argument, we con-
cede the position of counsel upon this point, and pass to
their remaining contention.   Summing up their position,
counsel say :

"1. This money, or a part of it, at least, was paid out of
the village treasury and went into the hands of Sutton and
Mackey as payment, in part, for electric lighting for a term
of nine years and more.   Even though the court should
think that the idea of bonus as well as of lawful consid-
eration entered into payment of this money, it cannot now
be recovered by plaintiff without depriving defendants of
that lawful consideration without which they would not
have furnished lighting for the village.   In other words,
the court would not do one wrong to right another.

"2. A contract for electric lighting which involved an
advance payment could have been legally entered into by
the corporate authorities.

"3. If the court holds that the village acted in an irreg-
ular manner in bringing about this arrangement, then, by

reason of the part performance of the contract, it cannot be allowed to complain at the present time.

"4. The idea of bonus, as far as electric lighting is concerned, is negated in the express terms of the contract with Case et al. under which the village paid this money. Would the village have paid the money if Sutton and Mackey had not agreed to furnish electric lighting? Would Sutton and Mackey have undertaken to furnish the lighting if the money had not been paid? These questions must be answered in the negative, and show that the idea of bonus did not control that part of the transaction."

And again, in their supplemental brief, counsel say:

"We contend that while the joining of the action of the village with that of its citizens through the mediumship of such a committee may be an irregularity which might seasonably have been prevented at the objection of citizens, nevertheless, the villiage having the unquestioned right to contract with regard to the subject-matter, and having so contracted, and the defendants having been clearly prejudiced thereby, and the village having received and appropriated the benefit which it sought to obtain by its action, that the decisions cited in our former brief apply, and that the inequity of now permitting the village to rescind the contract, after years of acquiescence, and when the parties can no longer be put in statu quo, should prevent recovery."

We do not think it necessary or profitable to discuss the law of ultra vires as applied to municipal corporations, or to pursue other of the interesting legal questions with which the briefs for appellants deal.

The act under which plaintiff is incorporated provides (1 Comp. Laws, § 2908) that the council may contract from year to year, or for any period of time not exceeding 10 years, for gas, electric, or other lights. This is the full measure of power in this behalf. This power was exhausted when the contract was made with Bennett, November 13, 1899, for lighting for 10 years. No one would assert that, this contract being in force and being performed, plaintiff would have power to make another covering the same subject and same period of time. If we could say that the effect of the sale by Bennett of his

plant, the destruction of the plant, and the attitude of defendants were together equivalent to an abrogation of the Bennett contract, and that the village was in position to make a new contract for lighting, it is still true that its power in this behalf is a power to contract. It has made no.such contract. The village is not a party to the contract with defendants.

There is another proposition not to be overlooked. If we could say that the village is indirectly and beneficially a party to the contract with defendants, it would appear that the $2,000 of village money was paid to defendants as much to secure a flouring mill as an electric light plant. It does not appear that the village has the power to so aid, by contract or otherwise, private adventures.

Counsel for appellants say that the case falls directly within the rule laid down in *Coit* v. *City of Grand Rapids,* 115 Mich. 493. We think that the case is easily to be distinguished.

In our opinion, the errors discussed are not well assigned, and the judgment should be affirmed, with costs.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.