VILLAGE OF PLAINWELL v. EESLEY LIGHT
& POWER CO.

1. INJUNCTION—BILL TO RESTRAIN COMPANY FROM INCREASING CONTRACT RATES—ELECTRICITY.

   The bill of a village in behalf of itself and its inhabitants to restrain an electric light and power company from increasing its rates beyond those provided in a 10-year contract between the parties authorized by 1 Comp. Laws 1915, § 2782, *held*, to state a case for injunctive relief.

On right to raise rates of public service corporation fixed by franchise, see note in L. R. A. 1915C, 287.

On right of public service corporation to judicial relief from contract rates which have become inadequate, see note in 6 A. L. R. 1659.

2. ELECTRICITY—PARAMOUNT RIGHT OF STATE TO FIX RATES—
DELEGATION OF POWER—EXERCISE OF RIGHT BY MUNICIPAL
CORPORATION.

> The paramount right of the State to fix rates between a
> municipal corporation and a public utility company was
> exercised by delegation when the village entered into a
> 10-year contract with defendant light and power company
> for electricity at specified rates in pursuance of 1 Comp.
> Laws 1915, § 2782.

3. SAME—RAILROAD COMMISSION—PUBLIC UTILITIES COMMISSION
—CONTRACTS NOT IMPAIRED—STATUTES.

> *Held*, that the power so delegated to municipal corporations
> to contract in regard to rates was not withdrawn or
> impaired by 1 Comp. Laws 1915, § 4842 *et seq.*, giving to
> the railroad commission control and supervision of the
> business of transmitting and supplying electricity through
> the public highways, streets, etc., with the power to
> regulate rates, or by Act No. 419, Pub. Acts 1919,
> abolishing said railroad commission and creating the
> public utilities commission, since such contracts were
> saved by provisos in said statutes.

4. SAME—FRANCHISE—SUBSEQUENT CONTRACT TO BE TREATED AS
PART OF FRANCHISE.

> Where a contract for rates was made subsequent to the
> granting and acceptance of a franchise, the contract is to
> be regarded and treated as supplemental to the original
> franchise.

5. SAME—FRANCHISE CONTRACTS—REASONABLENESS OF RATES
DETERMINED AS OF DATE OF CONTRACT.

> The question whether rates for electricity, as fixed in a
> contract between a municipal corporation and an electric
> light and power company, are reasonable, must be
> determined as of the time the contract was entered into.

6. MUNICIPAL CORPORATIONS — ELECTRICITY—RATES — POWER TO
CONTRACT—ABROGATION OF EXISTING CONTRACT RESTORES POWER.

> Although a municipal corporation had exhausted its power
> to contract in regard to rates for electricity by entering
> into a contract in regard thereto, said power was restored
> by the abrogation of said contract and the making of
> another for 10 years, as authorized by 1 Comp. Laws
> 1915, § 2782; the former contract terminating on the day
> the later one took effect.

7. ELECTRICITY—MUNICIPAL CORPORATIONS—LENGTH OF TERM— ULTRA VIRES—STATUTES.

> That a period of 5 months and 24 days was allowed in said contract for preparation, in addition to the 10 years provided by the statute, would not render the contract *ultra vires* and void because in excess of the statutory period, since it may be said that a reasonable time for preparation is necessary, and what is a reasonable time must depend upon the facts of a given case.

8. SAME—RATES FOR BENEFIT OF INHABITANTS—RIGHT TO CONTRACT FOR REASONABLE TIME.

> Since the statutory limitation does not apply to that portion of the contract relating to rates for the inhabitants of the municipal corporation, and as to them the contract may be for a reasonable time, *held*, that 10 years, 5 months, and 24 days is not unreasonable.

Appeal from Allegan; Cross (Orien S.), J. Submitted April 22, 1921. (Docket No. 51.) Decided June 6, 1921.

Bill by the village of Plainwell against the Eesley Light & Power Company to enjoin defendant from increasing its rates. From a decree for plaintiff, defendant appeals. Affirmed.

*Ogden Tomlinson* (*Harry C. Howard,* of counsel), for plaintiff.

*Ed. J. Anderson* (*Alfred J. Mills,* of counsel), for defendant.

CLARK, J. The State, by section 8, chap. 12, Act No. 3, Pub. Acts 1895 (1 Comp. Laws 1915, § 2782), gave villages the power to contract

"from year to year, or for a period of time not exceeding ten years, with any person or persons, or with any duly authorized corporation, for the supplying of such village or the inhabitants thereof, or both, with gas, electric or other lights, upon such terms and

conditions as may be agreed; and may grant to such person, persons or corporation the right to the use of the streets, alleys, wharves and public grounds of such village as shall be necessary to enable such person, persons, or corporation to construct and operate proper works for the supplying of such light upon such terms and conditions as shall be specified in such contract."

Act No. 106, Pub. Acts 1909 (1 Comp. Laws 1915, § 4842 *et seq.*), gave to the then Michigan railroad commission control and supervision of the business of transmitting and supplying electricity through the public highways, streets, and places of the State, and the power to regulate rates. But the act contains this exception:

"*Provided, however,* That the commission shall in no case have power to change or alter the price for electricity fixed in or regulated by or under any franchise heretofore or hereafter granted by any city, village or township."

Act No. 419, Pub. Acts 1919, abolished the Michigan railroad commission, created the public utilities commission, gave the new commission the powers and duties of the old and added thereto, and in such act the following appears, quoting from section 4:

"In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township."

Plainwell is a village under the general statutes. The defendant is a corporation of Plainwell. Its business is the furnishing of electric power and light to the village and its inhabitants. In May, 1905, the village granted to defendant and defendant accepted a franchise to construct and maintain and operate within the village a system for the distribution of electricity for power and lighting for the period of 30

years. At that time another company was furnishing to the village and its inhabitants electric light and power under a franchise contract made September 8, 1904, for the term of 10 years. This contract, plaintiff consenting, was assigned to defendant who performed it according to its terms until it was abrogated by the contract next mentioned.

On March 7, 1913, the parties hereto entered into another contract to cover a period of 10 years beginning September 1, 1913, to furnish the village and its inhabitants electric light and power, at certain rates named in the contract. Since this contract defendant has furnished and still does furnish light and power at the contract rates. In August, 1920, defendant had its property appraised and claimed that for return on the investment and the value of its property a raise of rates was necessary and accordingly asked leave of the village to increase the same. The request was declined as was another request that the parties join in asking the public utilities commission, hereinafter called the commission, to fix rates.

In October, 1920, defendant filed with the commission a schedule of rates covering light and power for the municipality and its inhabitants higher than the contract rates. A copy of the schedule was served on the village with notice of said filing. The schedule was kept at defendant's office for public inspection and a notice of an intention to charge according to this schedule was published in the local newspaper. The new rates were to become effective November 1, 1920. Rules and regulations were also made. One of the rules stated that service would be discontinued 15 days after reading the meters unless the bills were paid.

On November 23, 1920, plaintiff filed its bill of complaint in behalf of itself and its inhabitants for a temporary order and an injunction restraining defend-

ant from increasing its rates beyond those provided by the contract and from violating the terms of the contract. A temporary restraining order was made. After hearing plaintiff was decreed the relief prayed. Defendant has appealed.

1. At the outset it may be stated, though counsel contend otherwise, that the bill states a case for injunctive relief.

2. Counsel for defendant say:

"We submit that the paramount right to fix and adjust rates between municipal corporations and public utility companies rests entirely within the legislature of the State although municipal corporations may contract with public utility companies in regard to rates for electric current. Such a contract is subservient to this paramount right in the State to readjust and change these rates," and cite the following cases: *Boerth* v. *City Gas Co.*, 152 Mich. 654 (18 L. R. A. [N. S.] 1197); *Alpena Electric Light Co.* v. *Kline*, 180 Mich. 279; *City of Monroe* v. *Railway*, 187 Mich. 364; *Traverse City* v. *Telephone Co.*, 195 Mich. 373; *Traverse City* v. *Railroad Commission*, 202 Mich. 575; *Attorney General* v. *Railway*, 210 Mich. 227; *City of Kalamazoo* v. *Titus*, 208 Mich. 252; *Clements* v. *McCabe*, 210 Mich. 207; *City of Cadillac* v. *Telephone Co.*, 195 Mich. 538.

But the contention and the cases cited are not applicable. The paramount right of the State has been exercised. It is not dormant. The contract between the parties is not permissive merely. It has been made pursuant to the delegation of power by the legislature to the village (see statute above quoted). The power so delegated has not been withdrawn nor was it impaired or modified by the act of 1909. But counsel say that the agreement of March 7, 1913, was a contract, not a franchise, and that it was not therefore saved from the act of 1909 by the proviso above quoted. We think it was the intent of the legislature to save from the act control of rates fixed by a fran-

chise contract such as we find in this case. It does not appear that the franchise granted defendant contained any agreement or schedule respecting rates. The contract is to be regarded and treated as supplemental to the original franchise. See *Lenawee County Gas & Electric Co.* v. *City of Adrian*, 209 Mich. 52. And it is significant that a similar proviso more carefully worded, above quoted, is found in said Act No. 419, Pub. Acts 1919. Surely the legislature did not intend by the act of 1909 to give to the then commission control of the rates where the franchise proper and the agreement or schedule as to rates were in separate writings and to deny such control in those cases where the franchise proper contained the agreement or schedule as to rates. The village had the right to make this contract fixing the rates. It has now the right to ask performance of it according to its terms without interference by the commission.

3. The rates were reasonable when the contract was made. The question of the validity of the contract as to the rates being reasonable is disposed of in the *Lenawee Gas Case* where it is said, quoting from the syllabus:

"If the validity of a franchise contract as to rates depends on the agreed rates being reasonable, it follows from the fact that there was a contract that the question of whether it was reasonable must relate to the time the contract was entered into."

4. It is said that the contract is *ultra vires* because (*a*) the making of it was attempted at a time when the power of the village had been exhausted by the making of the contract then in force, the contract of 1904, and, (*b*) it was for a longer period than 10 years, namely, 10 years and nearly 6 months.

On the first point counsel cite *Village of Morrice* v. *Sutton*, 139 Mich. 643, and cases from other jurisdictions, none of which is controlling. The contract of

March, 1913, in terms abrogates the former contract, provides that it shall become null and void on the date the later contract was to take effect, September 1, 1913.   The record does not disclose clearly the causes and considerations for the making of the new contract and the abrogation of the old, but we think the consideration for such abrogation is the new contract. No complaint is made of the terminating of the old contract, no wrong or impropriety in regard thereto is claimed.   The claim is of the making of the new contract while the old one was still in force.   The power to so contract, though exhausted by the making of the first contract, was restored by the agreement terminating such contract on the day the later contract was to take effect.

Of the second point the case of *City of Saginaw* v. *Consumers' Power Co.*, 213 Mich. 460, is decisive.   In that case a period of seven months intervened between the making of the contract and the beginning of its term.   This period was held to be a reasonable time for preparation and for installation of equipment for performance of the contract.   In the case at bar the contract is set out at length in the record.   We think it is to be inferred that for a prompt and full performance thereof time for preparation was necessary.   We think the time allowed, 5 months and 24 days, not unreasonable.   Indeed it may be said that in most if not all cases full performance of these contracts for a term equal to the statutory period of 10 years cannot be had unless there be allowed reasonable time for preparation.   The time should be allowed in good faith and for the purpose stated and whether reasonable or not must depend upon the facts of a given case. The statutory limitation does not apply to that portion of the contract relating to light and power for the inhabitants of the village.   As to them a contract may be for a reasonable time, and 10 years, 5 months and

24 days is not unreasonable. See *City of Saginaw* v. *Consumers' Power Co., supra.*

Other questions are suggested briefly by counsel but we do not think it necessary or profitable to discuss them.

The decree is affirmed with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.