CITY OF MONROE *v.* DETROIT, MONROE & TOLEDO SHORT LINE RAILWAY.

STREET RAILWAYS—MANDAMUS—REGULATION—MUNICIPAL CORPORATIONS.

Mandamus will lie to compel respondent railway company to comply with the provisions of its franchise, and the fact that it is subject to the authority of the Interstate Commerce Commission and the Michigan Railroad Commission will not relieve it from performing its obligations, in the absence of the exercise of any authority by said commissions.

Certiorari to Monroe; Gilday, J. Submitted April 6, 1915. (Calendar No. 26,207.) Decided July 23, 1915.

Mandamus by the city of Monroe against the Detroit, Monroe & Toledo Short Line Railway to compel respondent to comply with the provisions of its franchise in running its cars through said city. From an order granting the writ respondent brings certiorari. Affirmed.

*A. B. Bragdon* and *Clifton Kolb* (*Willis Baldwin,* of counsel), for relator.

*Thornton Dixon* (*Donnelly, Lyster, Brennan & Munro* and *Bernard F. Weadock,* of counsel), for respondent.

OSTRANDER, J. The relator seeks the writ of mandamus to compel respondent to operate cars during certain hours, pursuant, it is claimed, to the terms of a franchise granted by relator to respondent and contract relations thereby established. After a hearing the circuit court ordered the writ to issue, and the respondent reviews the action by certiorari.

The order will be affirmed unless, as respondent contends, the relations established by the granting and accepting of the franchise have been so changed that the ·franchise has no longer any force in the premises. Respondent states its contention as follows:

"(*a*) The respondent is an interstate carrier engaged in the transportation of passengers from a point in the State of Michigan to a point in the State of Ohio, and therefore the attempt on the part of the city of Monroe to compel the operation of the cars from the city of Toledo, Ohio, to the city of Detroit, Mich., or vice versa, is an interference with interstate commerce; that the power to regulate such interstate operations is reposed in the Interstate Commerce Commission by 'An act to regulate commerce,' approved February 4, 1887, 24 Stat. 379, c. 104 (Act June 29, 1906, 34 Stat. 584, c. 3591, 3 Federal Stat. Annotated 809), as amended, which act confers upon the Interstate Commerce Commission full and complete jurisdiction of all matters relative to the adequacy or inadequacy of interstate service rendered by this respondent.

"(*b*) That while the ordinance of September 22, 1902, may be fairly said, and it has been construed by this court, to be a contract between the city and the respondent, it is, nevertheless a contract subject to abrogation by operation of law. The contract of 1902 was entered into subsequent to the enactment of the Interstate Act, and therefore must be construed in the light thereof. The act reposes in the Interstate Commerce Commission all powers of regulation of inter-· state business.

"(*c*) That the contract of September 22, 1902, was made by the parties thereto by virtue of authority reposed in each of the parties by the laws of the State of Michigan. Such authority was conferred to the city of Monroe and to the respondent railway by the general railroad law of the State, which provided that the railway should obtain the consent, under such terms and conditions as the city might elect for operation on Monroe street in the city of Monroe. The municipality's power was a continuing power only so long as the State and State policy made it so. The charter of the respondent was a continuing charter

only so long as the State or State policy made it a continuing charter. The State in its wisdom and in pursuance of State policy created in the year 1909, by Public Act 300 of that year, a commission known as the Michigan Railroad Commission, and the State reposed in such commission broad powers relative to the regulation of carriers, subject to the jurisdiction of such commission. Section 6526 of Howell (2d Ed.) defines the carrier subject to the jurisdiction of the commission, and embraced in such definition is the business of this respondent. By section 6527 of Howell every carrier is required to furnish reasonable and adequate service. The carrier failing to comply with such statutory demand may be compelled by the Railroad Commission, under section 6549 of Howell (2d Ed.), to operate a reasonable service, and significant is the language of said section, which provides that any body politic or *municipal organization* which may deem service rendered it unreasonable or unjustly discriminatory may make complaint before the Railroad Commission.

"Public Act 300 of the year 1909 is a revocation of any power that the city of Monroe may have had previous to that date to regulate the business of this respondent in regard to service."

Something concerning the relations of relator and respondent will be found in the opinion of this court in *Attorney General, ex rel. City of Monroe,* v. *Railway,* 151 Mich. 473 (115 N. W. 422). It appears, also, from the petition of relator, that the original franchise or franchises under which the streets of relator were invaded by a railway company were granted in 1899 and in 1900, and related to the operation of a street railway within the city, and that the franchises were used by the grantee, the Detroit, Monroe & Toledo Short Line Railway, in constructing a line of railway from the city of Toledo, Ohio, to the city of Detroit, Mich., through the city of Monroe. The road having been constructed and being in operation, there was, in September, 1902, a regranting of the original franchise, by the terms of which:

"The cars or trains operated for the carrying of passengers shall be run as often as 'the common council shall direct, and as much oftener as the grantee, its successors or assigns may see fit; provided that said council may not require them to be run oftener than once in every hour in each direction between six o'clock in the forenoon and eleven o'clock in the afternoon. Between the hours of eleven p. m. and six a. m. the cars shall be run as the business interests of the people and the reasonable convenience of the public demand."

From some time in 1901 until in the winter of 1912-13 cars were run every hour from about 6 o'clock a. m. until 10 o'clock p. m., but in December, 1912, there was a refusal, or neglect, to run passenger cars between Detroit and Toledo which would pass through Monroe between the hours of 9 o'clock p. m. and 10 o'clock p. m. To this the city, by its council, made objection. In December, 1913, the respondent notified the city that thereafter it would not run a car either way between said hours. The city, by its council, passed a resolution requiring respondent to run a car each way between said intervals each day, in accordance with its franchise. The respondent restored the service, and continued it for a time, and again discontinued it. As cars were run when the petition was filed, between Detroit and Toledo, through Monroe, there is no local car going through Monroe to Toledo from 7:37 p. m. to 10:27 p. m., and none going north from Toledo, through Monroe, from 7:15 p. m. to 10:10 p. m., and none going south from 8:39 p. m. to 10:10 p. m.; the 8:39 p. m. car being a limited car making no stops for passengers from Detroit to Toledo, except at Monroe. There is a like limited car northbound at 8:20 p. m. The prayer of the petition is that respondent be commanded—

"to forthwith run one passenger car each way between Detroit and Toledo, which cars shall pass through the city of Monroe not later than one hour after the last car prior going the same direction shall have passed

through said city, and that said cars shall be what is called 'local cars,' stopping on signal at all crossroads, as were the cars taken off, and that such other order may be made in the premises as justice may require."

As was stated in the opinion above referred to—

"by the terms of the ordinance the parties have agreed that a local passenger business in the nature of a street railway business may be done, and that the rate of fare shall be not to exceed five cents for a ride of any distance on the routes named within the city limits; that both parties to the agreements contained in the grants understood and expressly stated their understanding to be that the railways within the limits of the city of Monroe were to be an integral portion or part of the line of railway extending northerly to the city of Detroit; southerly to the city of Toledo, and by express agreement agreed to and fixed the rate of fare chargeable for passengers taking passage in the city of Monroe to both of the above points. The parties have acted upon these agreements."

The rule that contracts such as the one here involved are made subject to the necessities of police regulations is recognized by this court. But no exercise of the police power, affecting the contract, is pleaded. It does not follow that because the contract may yield to the exigency of public necessity, when such exigency has been determined in a proper case and manner, by competent authority, that the respondent, a party to the contract, may ignore the contract obligation, plead the public or its own convenience as an excuse, and remit the relator to a commission for relief. On the contrary, it seems wholly reasonable that it should perform its contract obligations until relieved therefrom by competent authority.

The judgment is affirmed, with costs to relator.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.