CITY OF CADILLAC *v.* CITIZENS' TELEPHONE CO.

1. TELEGRAPHS AND TELEPHONES—RATES—INJUNCTION—ORDINANCES
   —MUNICIPAL CORPORATIONS—CONTRACTS.

   On a bill by a city against the assignee of a telephone
   company to enjoin the alleged violation of an ordinance
   relating to rates, evidence *held*, insufficient to show any
   binding contract, express or implied, as to rates between
   the city and either defendant or its grantor.[1]

2. SAME — CONTRACTS — BREACH OF CONTRACT — EQUITY — JURIS-
   DICTION.

   There being no binding contract, express or implied, as
   to rates between the city and either defendant or its
   grantor, there were no grounds for the assumption of
   jurisdiction by a court of equity.

3. SAME—REGULATION OF RATES—LEGISLATIVE QUESTION.

   The fixing and regulating of rates to be charged by a
   telephone company is a governmental, or a legislative,
   and not a judicial, function.

4. SAME—RAILROAD COMMISSION—JURISDICTION— RATES — REVIEW
   BY COURTS.

   The railroad commission has original jurisdiction to hear
   and determine the question of telephone rates, and review
   may be had by the courts.

Appeal from Wexford; Lamb, J. Submitted January 12, 1917. (Docket No. 126.) Decided March 30, 1917.

Bill by the city of Cadillac against the Citizens' Telephone Company for an injunction restraining defendant from increasing its rates and other relief. From a decree for defendant, plaintiff appeals. Affirmed.

*E. F. Sawyer,* for appellant.

*Travis, Merrick & Warner,* for appellee.

[1] On power of municipality, apart from contract, to regulate the rates to be charged by public service corporations, see note in 33 L. R. A. (N. S.) 759; 43 L. R. A. (N. S.) 994.

STEERE, J.   On December 3, 1894, one Henry W. Sill petitioned the mayor and common council of Cadillac for permission to use the public streets and alleys of the city for the purpose of erecting telephone and telegraph poles.   This communication was referred to the street committee which, on December 17, 1894, recommended "that the petition of Henry Sill for the use of streets and alleys for the placing of telephone poles be granted:   Provided the city be allowed the free use of the tops of the poles."   The report was accepted and adopted.   Sill soon thereafter installed a telephone system of modest proportions and operated the same, charging rates satisfactory to him and his subscribers, so far as shown.

On March 12, 1900, a general ordinance was passed by the common council, entitled:

"An ordinance to regulate the construction and maintenance of telephone lines in the city of Cadillac, and to establish rates for telephone service."

This ordinance made no reference to Sill, and, so far as shown, did not in any way require him to change his manner of using the streets, method of operating his telephone system, or the prices he was then charging.   The ordinance is devoted largely to specifications as to use of streets, etc., requires that before setting poles notice should be given of such intention and the work thereafter done under supervision of the board of public works or its authorized agent, and contains various other provisions common to such ordinances, not material here.   It further provides that any person or company to whom permission is given to install a telephone line under the ordinance shall have the right—

"to erect, control and maintain an electric telephone plant in said city, and to repair and extend the same and carry on the business of renting electric telephones and furnishing telephone service:   Provided, however, that the yearly rate for telephones used for business

purposes anywhere in said city shall not exceed $24, and the yearly rate for private residences anywhere in said city shall not exceed $15."

These were the rates then charged by Sill. He is not shown to have formally accepted this ordinance, nor to have been required to recognize it in any particular. He continued with his business as before, charging the same rates, and operating his system undisturbed and apparently in an acceptable manner until he sold out his plant and business in 1902 to the defendant Citizens' Telephone Company, which then took over and has since operated it.

No application for permission to operate its plant or to install any of its lines under the ordinance was ever made by defendant, nor was any express agreement entered into between it and the city. Defendant's general manager testified that he knew nothing about the ordinance until four or five years after they bought Sill out, but always supposed and claimed that defendant was using the highways in the city of Cadillac by authority of the telephone law under which it was organized; recognizing, however, under that law, the police power of the city to reasonably regulate the manner in which poles and other apparatus should be erected, installed, and maintained in its streets, for which reason, and not because of the ordinance, all reasonable requirements of the city in that particular have been observed and complied with.

No fault is found by plaintiff as to defendant's use of the streets or method of doing business except in the matter of rates recently charged, which, it is claimed, are in violation of those authorized by the ordinance, and excessive, for which reason this bill is filed to restrain defendant from violating the ordinance (on the ground that it is a binding contract between the parties), and (on the further ground that it is violating the general telephone act) —

"from in any way, shape or manner increasing any rate, toll, rental or charge for telephone service, and from altering any classification, control, practice, rule or regulation so as to increase the rate, toll, rental or charge heretofore made to its patrons under the ordinance aforesaid, except upon application to the State railroad commission made in accordance with Act No. 206, Pub. Acts 1913, and after due permission and order made by such commission in conformity therewith," etc.

The trial court held that no binding contract between the parties was proven for violation of which injunction could be granted; that plaintiff's claim and conflicting testimony relative to a failure of defendant to comply with the telephone law touching rates was, in the first instance, cognizable only by the Michigan railroad commission, to which administration of the law was committed by statute, and plaintiff was therefore not entitled to equitable relief in that particular.

It is conclusively shown that neither Sill nor defendant ever directly accepted or consented to be bound by the terms of the ordinance, and it certainly never became an express contract between the parties. If intended to apply to and bind Sill or those who might succeed to his property and rights, it was unhappily worded to that end. By section 1 it provided that all telephone lines, etc., *hereafter* erected and maintained in the city of Cadillac *shall* be erected and maintained in accordance with provisions of the ordinance. It provided that any person or firm desiring to erect or maintain a telephone line should "first make application to the city council," and in such application expressly agree to be bound by the terms of the ordinance, following which is the provision before quoted as to rates, etc. Six years before the adoption of this ordinance Sill had erected and up to that time been operating his telephone system in the city with permission from the council, without any

contract, express or implied, as to rates. He then had the undoubted right, serving the public without discrimination, to fix and change his schedule of rates, making such charges to his patrons for service as were acceptable to him and them. He had also acquired vested rights and interests by virtue of his expenditures in installing a public utility plant with the city's acquiescence, which could not be destroyed by a subsequent ordinance not accepted by him. While the city might have power to contract as to rates with those willing to contract, it is not shown nor presumed to have been empowered by its charter to regulate or fix the rates which might be charged. Having purchased Sill's legally installed and operating public utility and business, defendant had, in addition to the rights acquired from him, the further right under the law by which it was incorporated to maintain, construct, and operate its lines "along, over, across," etc., "any public places, streets and highways  *  *  *  in this State," subject to the police power of the city to control, for public safety and convenience, the manner of so doing. The testimony in this case fails to show any binding contract as to rates, express or implied, between the city and either Sill or defendant. Therefore the grounds for exercise of original equity jurisdiction, before the State railroad commission acted or was appealed to, recognized in *City of Monroe* v. *Railroad,* 187 Mich. 364 (153 N. W. 669), and *City of Traverse City* v. *Telephone Co.; ante,* 373 (161 N. W. 983), are wanting.

It is further contended for plaintiff that the city is entitled to remedy by injunction to protect its citizens from excessive and illegal rates, exacted by defendant, a chartered public utility corporation, in violation of section 10 of Act No. 206, Pub. Acts 1913 (2 Comp. Laws 1915, § 6698), which forbids telephone companies increasing *any* rate or charge, or so alter-

ing any classification, contract, or rule as to result in an increase of rates, under any circumstances, except upon application to the railroad commission, and a finding by it that the increase is justified—such application to be accompanied by notice with proof of its publication in a newspaper of general circulation in the territory served, followed by a hearing at a date fixed by the commission.

The facts and circumstances relating to that feature of the case are quite similar to those disclosed in *City of Traverse City* v. *Telephone Co., supra.* The contention arose here, as there, over a move made by defendant to increase the rate it was charging old subscribers for a certain kind of service to the same it was exacting from newer subscribers. On February 7, 1913, it filed a schedule with the State railroad commission purporting to be a statement of the various rates it was then charging and collecting, but which in fact did not disclose the true situation. No aggressive effort was made to uniformly enforce the schedule rates until the following December, when it served notice upon a large number of old subscribers, who were paying less than the claimed schedule rate for individual line residence service, that they must pay an increased charge equaling that rate unless they accepted a so-called "select party line service," which was a different and less satisfactory service scheduled at a lower rate. It is claimed by plaintiff that this was a change and increase in charges (existing when, before and after the schedule was filed, and which had been regularly charged and collected) made without permission of the commission, and a palpable violation of the statute which plaintiff in behalf of its citizens is entitled to have restrained by injunction.

Under the law which plaintiff seeks to restrain defendant from violating in the matter of rates, telephone companies are made common carriers, and ad-

ministration of the law is committed to the railroad commission with large vicarious powers to regulate and control them as a governmental agency. Supervision of rates is included within its powers. The commission is authorized to entertain complaints, adopt rules to govern its proceedings, and "to hear and determine all complaints against the practices, rates, tolls, rentals, or charges, or services rendered, or facilities furnished, or complaints as to services withheld or refused to be rendered," etc. A severe penalty is provided for failure or refusal to observe any rate, charge, toll, or order fixed or established by the commission. Detailed provision is made for review of any action or order of the commission in the circuit court in chancery, at the instance of dissatisfied parties. Control of a threatened or actual violation of this penal statute is expressly delegated to the commission with plenary power to act.

The fixing and regulation of rates to be charged by public utilities is a governmental or legislative, not a judicial function. No issue of reasonableness of rates is raised here by the pleadings or proof. The complaint is of rates charged contrary to contract and in violation of the statute. Plaintiff has failed in proof upon the first; as to the latter, original jurisdiction to hear and determine the question of rates has been committed to the commission by legislative enactment, with ample provision for review by the courts. We find no occasion for the courts to interfere with the prescribed course by prematurely assuming jurisdiction.

The decree is affirmed, with costs to defendant.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.