WALKER BROTHERS CATERING CO. *v.* DETROIT CITY
GAS CO.

1. MUNICIPAL CORPORATIONS — FIXING GAS RATE FOR PERIOD OF
   YEARS IN EFFECT A FRANCHISE REQUIRING APPROVAL OF VOTERS.
      Where a gas company's franchise had expired, the adop-
      tion by the city council of the report of an arbitration
      committee recommending increased rates for a period of
      three years, but that in other respects the old franchise
      be continued in effect for said period, amounted to a
      franchise required by Art. 8, § 25 of the Constitution, to
      have the approval of three-fifths of the voters before it
      became valid.[1]

2. GAS — EXPIRATION OF FRANCHISE TERMINATED GAS COMPANY'S
   RIGHTS IN THE STREETS.
      When a gas company's franchise expired, the rights of
      the company in the streets terminated unless continued
      by mutual agreement, but the property of the company
      continued to belong to it.[2]

3. SAME — RATE FIXED IN FRANCHISE NOT BINDING AFTER ITS EX-
   PIRATION — RIGHT OF COMPANY TO FIX REASONABLE RATE.
      The rate fixed in a gas company's franchise is not binding
      after the franchise has expired, and where it continues
      the service it has the right to fix a reasonable charge
      therefor, which will not fail because not acted upon by
      the public utilities commission under Act No. 419, Pub.
      Acts 1919.[3]

4. SAME — GAS CONSUMERS OR GAS COMPANY MAY APPLY TO PUBLIC
   UTILITIES COMMISSION TO FIX RATE.
      In a suit by consumers of gas to restrain a gas company
      from collecting the rate fixed by itself, on the expiration
      of its franchise, the bill is dismissed, on appeal, because
      of the failure of plaintiffs to show that said rate is un-
      reasonable, but without prejudice to the right of plaintiffs
      or other consumers of gas, or defendant, to apply to the

---

[1]Municipal Corporations, 28 Cyc. p. 352 (1926 Anno); [2]Gas,
28 C. J. § 17 (1926 Anno); [3]Id., 28 C. J. §§ 34, 38 (1926 Anno);

public utilities commission, under Act No. 419, Pub. Acts 1919, to fix the rate to be charged.[4]   Per McDONALD, C. J., and CLARK, SHARPE, MOORE, and FELLOWS, JJ.

Appeal from Wayne; Webster (Arthur), J.   Submitted December 5, 1924.   (Docket No. 147.)   Decided April 24, 1925.   Rehearing denied June 18, 1925.

Bill by the Walker Brothers Catering Company and others against the Detroit City Gas Company to enjoin the collection of certain rates.   The city of Detroit intervened as a party plaintiff.   From a decree for plaintiffs, defendant appeals.   Reversed, and bill dismissed.

*Lightner, Oxtoby, Hanley & Crawford,* for plaintiffs.

*George A. Kelly,* Corporation Counsel, for intervening plaintiff.

*Angell, Turner & Dyer (Henry E. Bodman & W. F. Douthirt,* of counsel), for defendant.

MOORE, J.   The questions involved in this litigation are so clearly stated by Judge Arthur Webster in an opinion filed by him, that we quote from it as follows:

"The Detroit City Gas Company was operating in the city of Detroit under a franchise granted in 1893, which expired by limitation of time October 31, 1923. About the time this franchise expired negotiations were pending between the common council of the city and the gas company relative to new rates.   The company and the common council agreed to submit the whole matter to a board of arbitration, and this board, after a hearing lasting over several months, made its report.   The common council, by resolution, approved and adopted the report of the board of arbitration, and the gas company spread a like resolution of acceptance on its records.   The report of the arbitrators increased the rates called for in the old ordinance. This increase appears in two different ways.   As to

[4]Gas, 28 C. J. § 34.

certain classes of users the rates were increased in dollars and cents; and the arbitrators also allowed the gas company to decrease the calorific value of the gas by allowing a decrease from 600 British thermal units to 530 B. T. U., which effected an economy in the manufacture of gas.    It appears from the record that permission to reduce this calorific value was given by a resolution of the common council dated April 1, 1924, which was a short time in advance of the final report of the board of arbitration, but was done upon the recommendation of the board of arbitration.    Subsequently, on July 8, 1924, this resolution of the common council granting permission to reduce the calorific value was repealed.    The award of the arbitrators provided that the rates fixed should remain in force three years from and after November 15, 1923.

"The bill in this case was filed by certain large consumers of gas to enjoin the collection of the higher rates fixed by the arbitration board, and now being charged by the gas company.    Subsequently the city of Detroit, through the corporation counsel, intervened in this proceeding and became a party plaintiff.

"Two important questions are presented on this record:

"*First.* Is the award made by the arbitrators and accepted by the common council and the gas company a binding and valid determination of the rate to be charged by the gas company?    And

"*Secondly:* If it is not valid, has the gas company a right to promulgate a rate which will give it a fair and reasonable return?

"The court must determine these questions upon legal principles.    Whether the municipality should in morals be bound by a bargain made by its common council is outside the issue.    The question before the court is whether the common council had the power to enter into the agreement in question.    If the common council lacked this power, then it cannot bind the city or the citizens of the municipality.

"Section 25 of article 8 of the Constitution of this State provides, among other things:

* * * " 'Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject

to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of said city or village voting thereon at a regular or special municipal election.' * * *

"Plaintiffs contend that the agreement between the common council and the gas company is in effect a franchise and falls within this provision of the Constitution.

"The defendant company insists that the proceedings taken do not amount to a franchise, but merely to a fixing of the rates; and that while the agreement provides for a rate which shall be uniform during a period of three years, counsel for defendant insist that this is revocable at any time at the will of the city by simply ordering the gas company to vacate the streets. In other words, the gas company's rates are fixed for three years, but their tenancy of the streets is revocable at will.

"To my mind the report of the arbitrators will not bear this construction, because the report undertakes to continue the ordinance of 1893 in effect, except so far as modified. However, assuming that such action was beyond the power of the parties, and that as contended by defendant's counsel we have a rate fixed for three years with the rights to occupy the streets determinable at the will of the city, such a condition would place the city in a situation where it must either accept the rates fixed during the three-year period, or as the alternative, do without gas. When viewed from this standpoint it seems to me that the fixing of rates for a period of three years does amount to a franchise, and as such should have been first approved by three-fifths of the electors before it could be valid.

"If, on the other hand, this arbitration award is defended as a day to day rate which may be revoked at will by the city, then the resolution of July 8, 1924, rescinding the right to reduce the calorific unit is in effect a revocation of the award or agreement. So that, viewed from any angle, I am of the opinion that the method of attempting to fix a rate was not within the power of the common council and could not have any binding force until first approved by three-fifths of the electors of the city. Such a proposition is

presented by the ordinance which is now before the common council and is to be submitted to the electors at the primary election to be held September 9th next.

"This award of the arbitrators being invalid, what are the rights of the defendant company? Its franchise has expired; it has its plant in the city and its mains in the city streets. Without doubt a utility placed in this situation, so·long as it is allowed to remain in the streets, has the right to charge a reasonable rate for its service, and the utility, in the absence of any statutory provision, would have the right to itself promulgate such a rate which would be upheld by the court providing the rate was found to be a reasonable one. Plaintiffs in their bill have attacked the rate as excessive and unreasonable. The defendant by its answer maintains that it is a fair and reasonable rate. No proof was offered by plaintiffs, and with the pleadings in this condition the rate for the purpose of passing on the legal questions involved in the case must necessarily be assumed to be reasonable.

"This brings us to the question of whether there is any statutory provision governing the situation in which the city and the company find themselves. The plaintiffs contend that the public utilities act of 1919 covers this exact situation. It will be readily seen that the question is a close one, as the Supreme Court divided four to four in the only case before it involving this issue. It is rather peculiar that the gas company should be strenuously insisting that only the city may apply to the utilities commission to fix rates, while the city as strenuously contends that this right is not exclusively its own, but that the gas company itself has a right to apply to the commission. It would seem then that the sooner this question is determined the better it would be for both the city and the gas company, and that really what the parties need is an early authoritative decision upon the proposition.

"It may be, as claimed on the argument, that when the public utilities act of 1919 was before the legislature there was a feeling of jealousy on the part of municipalities, and that amendments were proposed by the advocates of home rule which were thought to

give the municipalities entire control of the situation. These amendments however, were made to a bill which was framed, on the whole, for a different purpose, and while legislative debates may be persuasive—none of importance has been cited on the hearing—conferences outside of legislative halls can scarcely be taken into consideration.   An act of the legislature, very much as a contract between two parties, should be taken as a whole and read from the four corners of it.   Reading this act from the four corners, and having in mind the modern tendency to place control over rates of utilities in the hands of commissions, it seems to me that the act is broad enough to cover the situation presented in the instant case where the franchise of the gas company expired and a new rate is to be fixed.

"The company has already filed with the utilities commission its old schedule of rates; that is, the rates in force while the 1893 ordinance was in effect.   Subsequently and immediately after the award of the arbitrators it filed with the utilities commission the new rates.   If these new rates do not amount to an agreement between the city and the gas company (and I think they cannot be held valid as such) then this new schedule of rates may be made effective under section 7 of Act No. 419, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 8164 [7]), by receiving the approval of the utilities commission.   But under that same section these rates cannot be charged by the company or collected by it until they have the commission's approval. I am persuaded as pointed out by Mr. Justice FELLOWS in the case of *Taylor* v. *Public Utilities Com'n,* 217 Mich. 400, that this would be the more orderly method and more in keeping with the modern tendency towards commissions for rate determinations.   Consequently the rates under the ordinance of 1893 should remain in effect until an ordinance approved by the electors of the city is adopted, or until a determination is made by the utilities commission.

"It follows from this opinion that the arbitration award being invalid as beyond the power of the common council, and the new rate promulgated by the gas company not having as yet been approved by the utilities commission, an injunction should issue to restrain the collection of these new rates."

A decree was filed in accordance with the opinion, and the case is brought into this court by appeal.

We think it well to quote from the award as follows:

"The company during the last four years was unable to pay any dividends to its stockholders, and this fact would reflect the inadequacy of the old as compared with the present conditions unless there was something amiss in its management, or its books failed to show an accurate and true condition of its affairs.    On these points, if you consider only the testimony of the city's witnesses, no criticism of note was made of its accounts, they reveal frankly the history of all its transactions.    *    *    *

"It is a pleasure to state that upon all of the large items of cost, including production, transmission, distribution, collection, general and income taxes, there was substantial agreement among all of the witnesses, and these sums fixed by the experience of the company have been considered in establishing the rates.    *    *    *

"We have considered the cost of manufacture, distribution, commercial, general and miscellaneous expenses, general taxes, income tax, depreciation and retirement, earnings necessary to release bonds under the mortgage for the necessary extensions and additions to meet present and future requirements, and a fair return upon the value of the property, and have reached the conclusion that these will be met by the payment of the following rates, which are lower than those existing in any other similar city in America.

(Then follow the rates in detail.)

"We do however, offer this report as one which treats each class fairly, and gives to the company the necessary revenue to maintain and operate its plant, and provide a fair return on the capital invested and employed for this service in this community.    Anything less than this would be as unfair as anything more would result in an injustice to all."

No testimony was offered by the plaintiffs in the instant case bearing upon the question of the reasonableness of the rates, and it will be noted that the trial court assumed they were reasonable.

Counsel for the appellant insist that what was done does not amount to franchise.   In passing upon that question the following language of the award should not be overlooked, we quote:

"The ordinance of 1903, as amended, except as it is modified by this award, shall continue in full force and effect for the period fixed by this arbitration agreement."

And it was also agreed in the award that the rates were fixed for three years.   It is difficult to see how the rates could be collected for three years without the tenancy of the street continuing for that time. We think the trial judge was right in holding that what was done amounted to a franchise and required the approval of three-fifths of the voters before it would be valid.

The question still remains—and it is the pivotal question—Has the gas company, under the circumstances shown here, the right to promulgate a rate which will give it a fair and reasonable return?   We think it may be said that when the franchise expired the rights of the gas company in the streets terminated, unless by mutual agreement.   *City of Detroit* v. *Railway*, 172 Mich. 136.   The property of the gas company continues to belong to it.   172 Mich. 136.

In the instant case there was an effort made at mutual agreement.   It failed only from the fact that, though more than a majority of the electors voted favorably, three-fifths of the electors failed to do so. No one wants the gas company to discontinue operations.   The gas company does not desire to discontinue them.   No one should desire the company to do business at a loss.   *Monroe Gaslight & Fuel Co.* v. *Utilities Com'n*, 292 Fed. at p. 150; *Newton* v. *Consolidated Gas Co.*, 258 U. S. 165 (42 Sup. Ct. 264).

It is said the public utilities commission failed to

act because it doubted its right to do so in view of the decision in *Taylor* v. *Public Utilities Com'n,* 217 Mich. 400.

The franchise having expired, it would seem to follow that the rate fixed by it was not still binding. See *Pacific Gas & Electric Co.* v. *City and County of San Francisco,* 211 Fed. at p. 205.

In Pond on Public Utilities, § 451, it is said:

"Where the rates have not been fixed by the State or any authority acting for it, the municipal public utility having the right to furnish the service by virtue of that fact has the right to fix the charge for its service, although of course the reasonableness of the charge when fixed is a question for the courts to determine, and where they are excessive they will be set aside by the courts the same as where the State authority fails to fix the proper rate."

See *Duitz* v. *Kings County Lighting Co.,* 188 N. Y. Supp. 67.    See *City of Madison* v. *Madison Gas & Electric Co.,* 129 Wis. 249 (108 N. W. 65, 8 L. R. A. [N. S.] 529, 9 Ann. Cas. 819, 116 Am. St. Rep. 944); *Village of Otsego* v. *Allegan County Gas Co.,* 203 Mich. at p. 287.

In volume 38 Harvard Law Review, commencing at p. 202, there is a very learned and elaborate discussion of public utility rates in the absence of statute. Many authorities are cited and the article concludes (p. 231):

"It would seem, therefore, fully established, both on principle and on authority, that in the absence of applicable regulatory legislation, a public utility has the power to fix its own rates and charges, subject to the common-law duty that the charges must be reasonable.    In the days before general legislative regulation became usual such power was unquestioned.    It was the well settled common-law situation; and the common law applied equally to individuals and to corporations and holders of franchises, unless the charter or franchise itself specifically fixed rates. After general legislative rate regulation became

normal, the common law continued where there was complete absence of legislative regulation and where there was legislative regulation which did not cover the entire subject-matter.   It also continues where there is no applicable legislative regulation owing to the fact that a commission order or municipal ordinance is *ultra vires,* or to the fact that the statute, order or ordinance violates some constitutional provision."

In the instant case it is not shown that the rates it it sought to collect are unreasonable.   If the city thinks they are it can easily take the judgment of the public utilities commission.

We think the trial judge was wrong in holding that the new rates, though reasonable, must fail because the public utilities commission has not acted upon them.

The decree is reversed and the bill of complaint is dismissed, with costs to the appellant.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, and FELLOWS, JJ., concurred with MOORE, J.

FELLOWS, J. (*concurring*).   I agree fully with the opinion written in this case by Justice MOORE.   There has been up to the present time a failure in the law in this State to provide a method for fixing rates for gas companies, and when I refer to failure in the law, I refer as well to "bench law" as to "statute law." This failure in the law is due in a great degree if not entirely to the fact that this court by reason of an equal division was unable to declare the law.   *Taylor* v. *Public Utilities Com'n,* 217 Mich. 400.   Since that case went down there has been a change in the membership of this court and I think we should now, if possible, put an end to this failure of the law and hold in accordance with the opinion prepared by the writer in that case.   I think the dismissal of plaintiff's bill should be without prejudice to the right of

plaintiffs or other consumers of gas or defendant to apply to the commission to fix rates to be charged.

MCDONALD, C. J., and CLARK, SHARPE, and MOORE, JJ., concurred with FELLOWS, J.

WIEST, J. (*concurring in the result.*)    The learned circuit judge was clearly right in holding the arbitration agreement between the city and the Detroit Gas Company void.    This being true, the award of the arbitrators could not operate in the nature of a franchise.    Discussion of the point that a franchise requires a submission to ballot is unnecessary.

In *Taylor* v. *Public Utilities Com'n*, 217 Mich. 400, this court was divided upon the question of whether private citizens, users of gas, could invoke action by the commission.    The writer then entertained the opinion, and still retains it, that jurisdiction given the commission by the statute, upon application of a municipality, is conditioned upon application by a municipality.    Such is the language of the statute. Act No. 419, Pub. Acts 1919, § 4 (Comp. Laws Supp. 1922, § 8164 [4]), provides:

\* \* \* "In any case where a franchise under which a utility is, or has been, operated, including street railways shall have heretofore expired or shall hereafter expire, the municipality shall have the right to petition the commission to fix the rates and charges of said utility in accordance with the provisions of this act, or to make complaint as herein provided with reference to any practice, service or regulation of such utility, and thereupon said commission shall have full jurisdiction in the premises."

If the statute should be extended to make it inclusive of users of gas such extension must come by way of legislation and not judicial determination. The statute grants the city right to apply to the commission and have the rates fixed and this right should be exercised.    Failure to exercise such right by the

city does not bring the issue of rates to court except the rates exacted be shown in fact to be unreasonable. In the absence of evidence the circuit court could not, and this court cannot, determine the rates charged to be unreasonable.

The bill should be dismissed with costs against plaintiffs.

BIRD and STEERE, JJ., concurred with WIEST, J.