CITY OF DEARBORN *v.* MICHIGAN CONSOLIDATED GAS CO.

1. PUBLIC SERVICE—JURISDICTION TO FIX GAS RATES—COURTS.

    After expiration of period for which rates were fixed by franchise granted defendant gas company by municipality, and matter of fixing rates had been submitted to public utilities commission, later succeeded by public service commission, jurisdiction assumed by commission was in it and not in the court.

2. GAS—RATES FIXED BY COMPANY.

    Action of gas company in fixing new schedule of rates for supplying gas to consumers after expiration of period for which they were fixed by franchise granted by plaintiff municipality was not unlawful, where rates had not been fixed by contract or regulatory legislation.

3. SAME—RATES—DELAYED PAYMENT CHARGE—DISCOUNT—PUBLIC SERVICE COMMISSION—JURISDICTION.

    After expiration of period in which gas rates were fixed by franchise the substitution of a delayed payment charge for consumers delinquent in paying for service in lieu of discount allowed for prompt payment as provided by franchise was a matter affecting rates and within jurisdiction of public service commission.

4. SAME—RATES—MINIMUM-PAYMENT PLAN.

    A minimum-payment plan for gas rates based upon consumption during previous year is a matter subject to jurisdiction of public service commission with whom matter of rate fixing was lodged for adjustment and will not be restrained by courts on ground that such rates are illegal.

5. PUBLIC SERVICE—GAS RATES—JURISDICTION—ACCOUNTING—INJUNCTION.

    City which had granted to gas company a franchise, in which rates were fixed for a five-year period, was not entitled to an accounting from the company for charges made in excess of franchise rates where court was without jurisdiction to enjoin company from its action in promulgating new rate schedule, penalties, and minimum-payment plan because public service commission had jurisdiction in the premises.

Appeal from Wayne; Keidan (Harry B.), J. Submitted January 21, 1941. (Docket No. 121, Calendar No. 41,496.)   Decided April 8, 1941.

Bill by City of Dearborn against Michigan Consolidated Gas Company, a corporation, to restrain the charging of rates in excess of those provided in certain franchises, for an accounting, and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*James E. Greene,* Corporation Counsel (*Walter S. Rae,* of counsel), for plaintiff.

*Angell, Turner, Dyer & Meek* (*Park Chamberlain,* of counsel), for defendant.

NORTH, J. On November 3, 1925, the village of Dearborn, by vote of its citizens, granted a franchise to the Detroit City Gas Company for a period of 30 years; subsequently, on April 4, 1927, the township of Dearborn granted a similar franchise to the company for a like period. In January, 1929, the territory embraced within the franchises became a part of the present city of Dearborn; and the two franchises may be considered as one for the purpose of this appeal.

The franchise provided that the gas to be supplied be of the same quality as that furnished to the city of Detroit; and included a schedule of rates to be charged. It further contained a provision for a 10-cent discount per 1,000 cubic feet used, upon prompt payment of bills by consumers. With regard to charges to be made for gas service, the franchise provided:

"The charge to be made by said company for gas service after the first five-year period may be fixed from time to time either by agreement between the

village and the company or in such other manner as may at the time be lawful."

The schedule of rates set forth in the franchise continued in effect with minor variations until June 9, 1932. On this date the company announced a general reduction of rates and substituted for the discount-payment provision in the franchise, a delayed payment charge of 10 cents per 1,000 cubic feet on all bills not paid on or before the last net payment date. No objection was made to this substitution and reduction in rates.

On April 8, 1935, the company increased its rates then in effect; and shortly thereafter, on May 9, 1935, the municipality protested by filing an application with the Michigan public utilities commission, charging that the five-year period for which the rates had been fixed in the franchise had expired; and that there was at that time no rate schedule in effect in the municipality fixed either by a franchise or contract. In the application it was asked that the commission determine the fair and reasonable rates to be charged.

Hearings were held before the commission on the petition of the municipality, and the matter was adjourned indefinitely by the commission on September 13, 1935, upon stipulation to that effect between the city and the gas company. The stipulation was entered into because of the fact that the gas company had just executed a contract with a pipe-line company for the furnishing of natural gas to the Detroit area, and because it appeared that rates charged for manufactured gas would be different from those for natural gas. On June 16, 1936, the company announced a schedule of rates for natural gas; and in addition promulgated a minimum-payment plan, which provided for rates

based upon consumption during the previous year. No objection was made by plaintiff to such action for approximately three years thereafter.

In September, 1937, Duncan C. McCrea, prosecuting attorney for Wayne county, and others filed a petition with the commission asking for an investigation of the charges made by the gas company, and praying for the fixing of fair and reasonable rates; and on October 4, 1939, the city of Dearborn filed an application with the public service commission asking for the reopening of the hearing on its petition, and that such hearing be held in conjunction with the hearing on the McCrea petition. On October 17, 1939, the commission granted the petition of the city to reopen the hearing and to consolidate it with the hearing on the McCrea petition.

On November 1, 1939, the city filed its bill of complaint against the gas company, now known as the Michigan Consolidated Gas Company, for an injunction restraining it forever and during the pendency of the suit from promulgating, establishing, imposing, charging, or receiving rates for the supply of gas or other services incidental thereto in that portion of the city of Dearborn embraced in the franchise, in excess of the amounts for rates provided for in the schedule set forth in the franchise. Plaintiff also asked that the company be restrained from establishing or receiving rates under the minimum-payment plan heretofore referred to; and for an accounting of all moneys received from consumers in excess of the amounts set forth in the original schedule included in the franchise; and for the payment to the city, for the benefit of such consumers, of such amounts as might be found to be due them on such accounting. On motion of defendant the trial court dismissed the bill of complaint, and plaintiff appeals.

Much of the argument of counsel for plaintiff on appeal is directed to the question of jurisdiction of the circuit court to entertain the suit. The trial court held that the Michigan public service commission, formerly the Michigan public utilities commission, had taken jurisdiction; and that, therefore, the court was without jurisdiction during the pendency of such proceedings; that the question of whether the rates charged were reasonable could not be presented, under the circumstances, until the commission had fixed the rates. Plaintiff contended that the company could not fix rates after the expiration of the rate schedule as set forth in the franchise; and that, in addition to the question of reasonableness of rates, there was involved the legality of the rate schedule.

Since the entry of the decree in the circuit court on June 26, 1940, dismissing the bill of complaint, and after the plaintiff had perfected its appeal and caused the record to be printed and filed in this court, the commission, on November 15, 1940, entered an order fixing the rates to be charged for gas in the city of Dearborn. In view of this order of the commission, plaintiff has expressly abandoned its prayer for injunctive relief.

This leaves as the only question to be considered, plaintiff's prayer for an accounting of all moneys, received by the company from consumers, in excess of the rates set forth in the schedule which was included in the franchise; and for payment over to the city on behalf of such consumers all sums so found to be due.

It is contended that, inasmuch as the company had violated the franchise, the court had jurisdiction for the purposes of an accounting, regardless of whether the commission had jurisdiction of the question of

the reasonableness of the rates. This question requires an examination of the claims with regard to the alleged violation of the franchise by defendant.

At the end of the first five-year period, the rates under the franchise had expired, and there was no contract in existence between the company and the city with reference thereto. The commission had assumed jurisdiction to fix fair and reasonable rates, on the petition of the city. Under these circumstances, the jurisdiction to fix such rates was in the commission, and not in the court. See *City of Detroit* v. *Michigan Public Utilities Commission,* 288 Mich. 267 (29 P. U. R. [N. S.] 203).

While, in the bill of complaint, there was some claim made as to the reasonableness of rates, it was said by plaintiff, in its brief, that the bill was not founded on the theory that the court should have taken jurisdiction to determine the reasonableness of rates, but rather should have taken jurisdiction because the rates and practices complained of were, on their face, in violation of specific provisions of a definite franchise contract, and were unlawful and illegal.

The grounds upon which this claim is based can be briefly stated. It is contended that, when the rates, set forth in the schedule included in the franchise, expired, it was necessary for new rates to be fixed, according to the language of the franchise, "either by agreement between the village and the company or in such other manner as may at the time be lawful;" and that the "unilateral" promulgation of rates thereafter by the company was in violation of the franchise. It is further contended that the change from the "discount plan" to the "penalty plan" was in violation of the franchise and illegal; and that the minimum-payment plan was discrimi-

natory and unlawful. Because of such facts, it was claimed that the trial court had jurisdiction to enjoin such illegal actions.

With reference to the promulgation of rates by the company after the expiration of rates in the schedule included in the franchise, it must be held that such action of the company was not unlawful. In *Walker Brothers Catering Co.* v. *Detroit City Gas. Co.,* 230 Mich. 564 (P. U. R. 1925 D, 366), it was held that, where a franchise had expired, the rates fixed thereunder were no longer in effect and binding, and that, where rates are not fixed by contract or regulatory legislation, a public utility has the power to fix its rates subject to the common-law rule that the charge must be reasonable. See, also, 38 Harvard Law Review, p. 202. Such rule is applicable in the instant case.

Was the penalty charge which was substituted for the discount plan a violation of the franchise, or is it to be considered a part of the new rate schedule? In the franchise, consumers were entitled to a discount of 10 cents per 1,000 cubic feet, if the bills were paid before a certain date. The substitution, after the expiration of the rate schedule and under the new rates, was that consumers who did not pay their bills before a certain date would be assessed an additional charge of 10 cents per Detroit gas unit consumed, or approximately 20 cents per 1,000 cubic feet more than the consumers who were not delinquent in payment. This substitution only affects the rates. It is apparent that a penalty or discount affects the amount of net return to the company, and has a definite connection and influence upon the fair rate of return which the company should earn. This is considered by the company in establishing base rates. If the discount plan is followed, the base rate is comparatively higher; if a penalty is charged, the

base rate does not include cost of collection of delinquent bills. We consider such substitution merely as a part of the charge for gas service, and properly to be considered as a part of the rates promulgated; and this was within the jurisdiction of the commission.

With regard to the minimum-payment plan, we further hold that rates for gas service based upon consumption during a prior period are subject to the jurisdiction of the commission on the question of whether they are fair and reasonable; and that, where the commission has jurisdiction of such rates, the courts will not interfere on the ground that they may restrain such rates as illegal.

There having been no jurisdiction on the part of the trial court to enjoin the company from any of its actions in promulgating rates, penalties, and the minimum-payment plan, due to the fact that the commission had jurisdiction in the premises, plaintiff is not entitled to the relief of accounting. The claim for an accounting in this case is predicated upon the premise that the circuit court, having jurisdiction to enjoin illegal violation of the franchise, had jurisdiction to grant the relief for an accounting; and that the fact that relief by injunction has been waived since the fixing of rates by the commission does not disentitle plaintiff to an accounting based upon violations of the franchise. Our holding that the franchise was not violated makes unnecessary a discussion of this claim.

Decree affirmed, with costs to defendant.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, WIEST, and BUTZEL, JJ., concurred. MCALLISTER, J., did not sit.