## No. 16,187.

### BENNETT ET AL. *v.* MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY.

(215 P. [2d] 714)

Decided February 20, 1950.

326

Messrs. Bennett & Heinicke, for plaintiffs in error.

Messrs. Brock, Akolt & Campbell, Mr. John R. Turnquist, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

THIS case arose when the Telephone Company, on November 12, 1947, put into effect a new general rate schedule for the city of Colorado Springs applicable to business and residence telephones and to extensions. This schedule replaced one that had been "substantially unaltered since prior to 1909." Plaintiffs in error, who were plaintiffs in the trial court, as subscribers to the telephone service in Colorado Springs, sought an injunction against the company "from charging or collecting rates for local telephone service in excess of the rates in effect prior to November 12, 1947," as to either themselves or "any other subscribers to such service." They also sought a refund of "the excess which may have been collected from plaintiffs or other subscribers," which excess on an annual basis they alleged to be more than $211,480. They further asked that the suit be treated as "a class action on behalf of plaintiffs and all telephone subscribers similarly situated within the city of Colorado Springs."

The trial court dismissed the complaint upon motion of the defendant company, and this dismissal is set forth as the sole specification of error.

The gist of plaintiffs' contention is that the city council should have approved the rate increase by ordinance and not by resolution, on the theory that such action was an attempted regulation of utility rates. The argument is that the city of Colorado Springs is a "home rule city" (Article XX, Section 6, Colorado Constitution), and has full and exclusive powers to regulate telephone rates within its limits; that this power may be exercised only by an ordinance or by initiative or referendum, and that where a municipal act is by its charter or other organic law stipulated to be done by ordinance that act may not be done by resolution. It therefore is argued that the rate increase is ineffective. Reliance is placed upon section 65, article XII, Colorado Springs Charter, which reads: "All power to regulate the rates, fares and charges for service by public utility

corporations is hereby reserved to the people, to be exercised by them by ordinance of the council or in the manner herein provided for initiating or referring an ordinance. Any right of regulation shall further include the right to require uniform, convenient and adequate service to the public and reasonable extensions of such service and of such public utility works."

The resolution which the city council actually adopted reads as follows:

"Whereas, the Mountain States Telephone and Telegraph Company has submitted to this Council a schedule of rates to be charged and collected for telephone service within the corporate limits of the City of Colorado Springs, and

"Whereas, this Council has examined said rates and has been fully informed as to the necessity for the filing of said schedule and the making of such charges and has found that said rates are fair, reasonable and equitable as far as appears from the limited basis of experience upon which said rates are based.

"Now, Therefore, be it resolved that it shall be lawful for The Mountain States Telephone and Telegraph Company to charge and collect for telephone service within the corporate limits of the City of Colorado Springs in accordance with the said schedule of rates submitted with its letter of application of June 5, 1947, to be effective on billing dates subsequent to November 20, 1947.

"It shall be lawful for the said The Mountain States Telephone and Telegraph Company to enforce its general tariff, rules and regulations which shall control said Company in its administration of the telephone service within the corporate limits of the City of Colorado Springs, which tariff, rules and regulations are kept on file by it with the Public Utilities Commission of Colorado.

"Be It Further Resolved that due to the limited period of experience upon which said rate schedule is predi-

cated and the uncertainty as to the continuance of the conditions which appear to justify said rate schedule at the present time, that this body shall review and reconsider the propriety of said rate schedule on December 14, 1948.

"By order of the City Council of the City of Colorado Springs sitting as a board of Public Utilities within and for the City of Colorado Springs, November 12, 1947."

The resolution was prepared and adopted pursuant to the provisions of Ordinance 1064, passed August 4, 1920 (being section 1098, article II, Code of Colorado Springs, 1922), which is in the following words: "No company or corporation operating any public utility in whole or in part within the city of Colorado Springs shall change any rate, fare, charge or regulation substantially affecting its service without the consent of the city council of said city or of the electors thereof."

█ The company maintains that since the new schedule adopted November 12, 1947, changed rates substantially affecting its service, it did obtain the consent of the city council by the council's resolution. Reliance is placed upon section 13 (a), article III, which reads: "At legislative sessions the council shall act only by ordinance, resolution or motion." Subparagraph (b) shows the equal treatment of ordinances and resolutions in respect to recording of votes and measures affecting expenditures of money; subparagraphs (c), (d) and (e) deal with the formalities of ordinances; section 14 with the publication of an adopted ordinance; and section 15 with its amendment or repeal.

It will be noted that the ordinance which requires the "consent of the city council of said city or of the electors thereof" to be obtained before a utility can make a substantial change in the rate structure, does not specify how the city shall give its consent; and since its charter provides that the council shall act "only by ordinance, resolution or motion," it would seem that, the method of consent not having been specified, a consent by reso-

lution—being one of the three methods by which the charter allows the council to act—would suffice.

Plaintiffs contend that the city council can regulate rates only by ordinance, and that the consent to a new rate schedule filed by the utility is in effect a regulation by the city council and therefore requires action by ordinance. The authorities do not seem to support this latter statement.

Mr. Chief Justice Taft, in *Wichita R. & L. Co. v. Public Utilities Com.*, 260 U. S. 48, 43 Sup. Ct. 51, 67 L. Ed. 124, dealt with section 20 of the Kansas Public Utilities law involving a similar consent provision as appears in section 1098, article II, of the code of Colorado Springs of 1922. The case before him involved an attempted changing of contract rates which we do not have in the instant case, but in the course of the opinion he said: "It is said that the order in this case was authorized by section 20, and therefore that all that was needed was the filing of a schedule of changed rates and the consent of the Commission, and that no finding was required, as in sections 13 and 16. This construction of section 20 is doubtless correct, but it shows that the filing of a schedule of changed rates under that section cannot accomplish the result of abrogating contract rates. It could not do so, any more than would the original filing of a schedule of rates under section 11 requiring every public utility to publish and file with the Commission all schedules of rates do this. The consent of the Commission in section 20 is made necessary only to prevent changing schedules without notice to the Commission and thus to secure a proper supervision of schedules. Such consent does not involve a hearing or a finding and a decision. The section does not, therefore, cover, or measure the essentials of, the proceeding in this case before the Commission which the order shows was upon pleadings and inter partes. We find nothing in *State ex rel. Caster v. Kansas*

*Postal-Telegraph Cable Co.,* 96 Kan. 298 [150 Pac. 544], which gives a different construction to section 20."

■ Had the city council of Colorado Springs, as the rate-making body, considered the rates unreasonable, then there would have come into play the procedural due process, to which Mr. Chief Justice Taft refers, involving notice and a hearing and finding as to the reasonableness of the rates; and if the rates had been found unreasonable, then a fixing or regulation of them. Any fixing of rates by the council after such a procedure must be by ordinance. But where the regulatory commission—in this case the city council—consents to the revised rate schedule filed by the utility "such consent does not involve a hearing or a finding and a decision." In such a case it is the utility that has initiated and established and regulated the rates. In accord with the foregoing is paragraph 2 of the syllabus in the Northwestern Reporter publication in *City of Cadillac v. Citizens' Telephone Co.,* 195 Mich. 538, 161 N.W. 989: "In absence of franchise contract obligations, a telephone company will not be enjoined from increasing its rates, although Pub. Acts 1913, No. 206, §10, prohibits increases without the Railroad Commission's consent, since the Commission has general jurisdiction over such rates."

■ It should here be noted that even if the form of consent, of which plaintiffs complain, was ineffective, the rate schedule promulgated by the company was still a valid one subject only to subsequent regulation as to its reasonableness by the regulatory commission—in this case, the city council. In the words of Mr. Justice Brandeis in *Skinner & Eddy Corp. v. United States,* 249 U. S. 557, 39 Sup. Ct. 375, 63 L. Ed. 772, 777: "In construing this provision it is important to bear in mind the limits of the Commission's control over rates. Neither the Act to Regulate Commerce nor any amendment thereof has taken from the carriers the power which they originally possessed, to initiate rates; that

is, the power, in the first instance, to fix rates or to increase or to reduce them."

In *Streator Aqueduct Co. v. Smith,* 295 Fed. 385, 388, the court said: "It is not only the privilege, but the duty, of a utility company under the Illinois Commerce Commission Act and its predecessor, the Public Utilities Act, to prescribe rates."

· In *Illinois Bell Telephone Co. v. Commerce Commission,* 304 Ill. 357, 136 N.E. 676, the Supreme Court of Illinois said: "The statute specifically provdies that, where a hearing is had on proposed new rates, if the same are found not to be just and reasonable, the commission shall determine what are just and reasonable rates. The right in the first instance to make rates lies with the utility.

\* \* \*

"An examination of section 36 of the act, however, is sufficient to disclose that the commission has no authority to make rates in the first instance, but a schedule of rates, where the rates are desired to be changed, is to be filed with the commission by the utility, and it is only where the commission, after a hearing, finds that the proposed schedule of rates, charges, etc., is not just and reasonable, that it becomes the duty of the commission to fix rates."

To like effect are: *Coplay Cement Mfg. Co. v. Public Service Com.,* 271 Pa. 58, 114 Atl. 649, 16 A.L.R. 1214; *City of Jackson v. Consumers Power Co.,* 312 Mich. 437, 20 N.W. (2d) 265; *Walker Bros. Catering Co. v. Detroit City Gas Co.,* 230 Mich. 564, 203 N.W. 492; *Harvard Law Review,* vol. 38, page 202; *City of Dearborn v. Michigan Consolidated Gas Co.,* 297 Mich. 388, 297 N.W. 534.

It would therefore appear that, even if the method of consent used by the council was an ineffective one, the rate schedule promulgated by the utility would still be effective but subject at any time to regulation by the city council—the council's regulation to become ef-

fective by ordinance in accordance. with the city charter, supra.

█ A third reason why we believe the trial court was correct in dismissing plaintiffs' complaint is that the complaint shows that plaintiffs have an adequate remedy at law. They should have first sought relief before the city council. This court recognized this procedure in *Denver v. Telephone Co.,* 67 Colo. 225, 184 Pac. 604, when it quoted with approval from *Home Tel. & Tel. Co. v. Los Angeles,* 155 Fed. 554, 211 U. S. 265, 53 L. Ed. 176, 29 Sup. Ct. 50: "The power to fix, subject to constitutional limits, the charges of such a business as the furnishing to the public of telephone service, is among the powers of government, is legislative in its character, continuing in its nature, and capable of being vested in a municipal corporation."

In *City of Cadillac v. Citizens' Telephone Co., supra,* the court thus amplified this thought: "The fixing and regulation of rates to be charged by public utilities is a governmental or legislative, not a judicial function. * * * original jurisdiction to hear and determine the question of rates has been committed to the commission by legislative enactment, with ample provision for review by the courts. We find no occasion for the courts to interfere with the prescribed course by prematurely assuming jurisdiction." Mr. Justice Lamar thus rephrased this thought in *Mitchell Coal Co. v. Pennsylvania R. R. Co.,* 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472: "The courts have not been given jurisdiction to fix rates or practices in direct proceedings, * * *. If the decision of such questions was committed to different courts with different juries the results would not only vary in degree, but might often be opposite in character—to the destruction of the uniformity in rate and practice which was the cardinal object of the statute."

The foregoing words were quoted with approval in

*Loomis v. Lehigh Valley R. R. Co.,* 240 U. S. 43, 36 Sup. Ct. 228, 60 L. Ed. 517.

In *Homestead Co. v. Des Moines Electric Co.,* 248 Fed. 439, 443, 12 A.L.R. 390, Judge Sanborn wrote: "Individuals interested therein as consumers, users, or otherwise may not maintain actions at law or suits in equity against the public service corporation, on the ground that such rates are unreasonable, without having first secured decision or action to that effect by the public tribunal authorized to prescribe the maximum limit of the rates changing the limit, or adjudging the rates complained of unreasonable."

■ From the foreging authorities there appears another reason why the complaint was properly dismissed, i.e., failure to make the City of Colorado Springs a party.

■ Finally, it should be noted that the citizen or telephone user has been deprived of no substantive right by the trial court's action. Whether the council consented to this rate schedule by ordinance or by resolution, it is, in either event, equally responsible to the citizens of its community for its act. This is not a case, then, of the council usurping what only the citizens had right and power to do. The sole question is whether the council, admittedly having the power to act, exercised it in proper form. We believe it did.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HAYS dissent.

MR. JUSTICE HAYS dissenting.

Section 65, article XII, of the Charter of the City of Colorado Springs adopted in 1909, provides inter alia: "All power to regulate the rates, fares and charges for service by public utility corporations is hereby expressly reserved to the people, to be exercised by them

by ordinance of the council or in the manner herein provided for initiating or referring an ordinance."

Notwithstanding the above section of said charter which provides that the council can only act through ordinance, it adopted a resolution, the general effect of which was to grant and approve a telephone rate increase effective November 20, 1947. The resolution recited the filing of a schedule of rates with the Colorado Utilities Commission and, in effect, incorporated said schedule in said resolution by reference, and thereby ratified and approved same.

It is contended that the resolution was authorized by virtue of the provisions of ordinance No. 1064 passed August 4, 1920, which provides: "No company or corporation operating any public utility in whole or in part within the City of Colorado Springs shall change any rate, fare, charge or regulation substantially effecting its service without the consent of the city council of said city or of the electors thereof."

It is apparent that the council had in mind section 65, supra, when it adopted ordinance No. 1064, because it therein referred to the only ways that rates could be changed under said charter provision, to wit: upon "consent of the city council" or "of the electors thereof." It is quite evident, in view of the expressed provisions of the charter, that the city council could only express its consent by ordinance and the electors of said city could only express their consent at the polls.

We have consistently held that the method provided by a city charter for exercising legislative power with respect to the regulation of utility rates is exclusive and any attempt to regulate them by any other method is void. *Berman v. City & County of Denver,* 120 Colo. 218, 209 P. (2d) 754.

As I view it from the foregoing, the judgment of the trial court should be reversed.

Mr. Chief Justice Hilliard joins in this dissent.